Gary Peter **KLAHR**, Plaintiff,

Herbert L. Ely, Individually and as Chairman of the Democratic Party of Arizona, and Peter MacDonald, Individually and as Chairman of the Navajo Tribal Council, Intervenors-Plaintiffs,

v.

Jack **WILLIAMS**, Governor of the State of Arizona, et al., Defendants.

Civ. No. 5112 PHX.

United States District Court, D. Arizona.

Dec. 20, 1974.

See also D.C., 339 F.Supp. 922.

Simon & Jekel by J. Stephen Simon, Scottsdale, Ariz., for plaintiff.

Brown, Vlassis & Bain by Bruce E. Babbitt, Phoenix, Ariz., for Peter MacDonald.

Mariscal, Weeks, Lehman & McIntyre by Marshall A. Lehman, Phoenix, Ariz., for Charles W. Pine, Chairman of the Democratic Party of Arizona.

Gary K. Nelson, Atty. Gen. by John M. McGowan, Sp. Asst. Atty. Gen., for defendants.

Boyden & Kennedy by John P. Kennedy, Salt Lake City, Utah, as amicus curiae, to present the testimony of the White Mountain Apache and Hopi Indian Tribes.

Lawrence Ollason, Tucson, Ariz., having previously represented Norman Green, County Atty., Tucson.

MEMORANDUM OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECREE

Before TRASK, Circuit Judge, and CRAIG and WALSH, District Judges.

PER CURIAM.

When this case was last before us, we held (339 F.Supp. 922) that Chapter 4, 30th Arizona Legislature, First Special Session (Arizona Laws 1971, 1st Special Session, Chapter 4), apportioning the State of Arizona for the election of

members of the Arizona Legislature, was constitutionally deficient only because, in the absence of evidence to the contrary, we were required to find that Legislative Districts 2, 3, and 4 in Chapter 4 were the product of a legislative plan to prevent members of the Navajo Indian Tribe in Arizona from being able to elect one or more of their own choices to the Legislature. As a consequence, by our decree of March 8, 1972, we provided a "court's plan" which apportioned the Arizona Legislature to be elected in 1972 and which would be effective until the further order of the court. The "court's plan" adopted the Legislature's Chapter 4 districting in all respects, excepting only Districts 2, 3, and 4, these Districts being so modified in the plan that the Navajo Indian Reservation was entirely within a single District, District 3.

Thereafter, the Arizona Legislature enacted Chapter 173, 30th Legislature, Second Regular Session (Arizona Laws 1972, 2d Regular Session, Chapter 173; A.R.S., §§ 16–1401, 16–1402), again apportioning the State for the election of members of the Legislature. In this apportionment effort, the Legislature altered the "court's plan" only with respect to Districts 2, 3, and 4.

■■ At a hearing held at the request of defendants on November 22, 1974, as to the validity of Chapter 173, the only attack on Chapter 173 was made by an intervenor-plaintiff on the ground that the moving force behind the enactment of Chapter 173 was a member of the Arizona Senate who was personally interested in enacting the legislation so that the political interests of his county of residence and his own interest in re-election were served. We hold that, assuming this to be true, it does not require us to find Chapter 173 unconstitutional. Successful efforts of a legislator to better his own prospects for re-election or to strengthen the voice of his constituents in the legislature does not *per se* constitute an "invidious purpose."

■ However, it is clear that the Arizona Legislature accomplished more by Chapter 173 than betterment of the interests of a particular legislator or the interests of the legislator's county of residence. To begin with, Districts 2, 3, and 4 provided by Chapter 173 are more compact than Districts 2, 3, and 4 in the "court's plan." Further, the "ideal population"—the population of each district if the total Arizona population were divided equally among the 30 Legislative Districts—is more nearly attained in Chapter 173 than in the "court's plan."

It is true that in the "court's plan" all of the Navajo Indian Reservation in Arizona is within District 3, while Chapter 173 places some members of the Tribe in District 2. However, Chapter 173 retains 90% of the Navajos in District 3 and they comprise a substantial majority of the population within that District. With respect to the Hopi Indian Tribe and the White Mountain Apache Indian Tribe, both of whom were dissatisfied with their treatment under the "court's plan," Chapter 173 locates 85 to 90% of the members of the Hopi Tribe in District 2, a result which was sought by the Hopis; and Chapter 173 also establishes District 4 with boundaries that include practically all members of the White Mountain Apache Tribe within that District, again a result approved by the Tribe affected.

The foregoing will constitute our Findings of Fact and Conclusions of Law, providing the basis for the Decree entered below:

## DECREE

Based upon the foregoing Memorandum Opinion and Findings of Fact and Conclusions of Law, and good cause appearing therefor,

It is ordered, adjudged and decreed that Chapter 173, 30th Legislature, Second Regular Session, provides a valid apportioning and districting of the Legislature of the State of Arizona; and

the terms and provisions of our Decrees heretofore entered in this cause relating to apportioning of the Legislature are vacated and shall be without any force or effect.